UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:09 CV 340-RJC-DSC

| | |
|---|---|
| COST MANAGEMENT PERFORMANCE GROUP, LLC, | ) ) ) |
| Plaintiff, | ) **MEMORANDUM AND RECOMMENDATION** |
| | ) **AND ORDER** |
| v. | ) ) |
| SANDY SPRING BANK, | ) ) |
| Defendant. | ) ) |

**THIS MATTER** is before the Court on Defendant's "Motion to Dismiss [for Lack of Personal Jurisdiction]" (document #3), "Affidavit[s] ..." (document #3-2 and 3-3), and "Memorandum in Support ..." (document #4), all filed August 7, 2009; and Plaintiff's "Memorandum in Opposition ... " and "Declaration[s] ..." (all document #7) filed August 24, 2009. On September 4, 2009, Defendant filed its "Reply ..." (document #8).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted, as discussed below.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

This is a breach of contract action in which Plaintiff Cost Management Performance Group, LLC, seeks to collect fees allegedly owed to it under a consulting services contract with Defendant Sandy Spring Bank. It is undisputed that Defendant is organized under the laws of Maryland with

branches in Maryland and northern Virginia. Plaintiff provides vendor contract negotiation and cost management consulting services to banks through offices in Cincinnati, Ohio; Charlotte, North Carolina; Naples, Florida and Salt Lake City, Utah. Although Plaintiff is organized under the laws of North Carolina, the parties' submissions establish that Plaintiff's principal place of business is located in Cincinnati, Ohio. Defendant's President and Executive Partner, Grant A. Karnes, works out of Defendant's office located at 2645 Erie Avenue, Suite 51, in Cincinnati, Ohio, 25208, which is the sole address listed on Defendant's website. Moreover, Defendant's press releases are issued from Cincinnati and state that Defendant is "headquartered" in Cincinnati, Ohio.

The parties' dispute concerns a Retained Services Agreement (the "RSA") dated May 14, 2007, a copy of which is attached to the Complaint. Under the RSA, Plaintiff agreed to provide certain consulting services to Defendant for an initial period of one year. Plaintiff contends that the RSA automatically renewed for another year in May 2009. Defendant denies that the RSA automatically renewed and contends that the RSA was allowed to expire by mutual agreement of the parties while the parties attempted, unsuccessfully, to resolve certain disputes regarding Plaintiff's performance under the RSA and reach an agreement on a replacement contract.[1]

Relevant to the Motion to Dismiss, the initial contact between the parties occurred in early 2007, when Karnes and other representatives of Plaintiff traveled to Maryland and made a presentation to members of Defendant's management team. Subsequently, the parties commenced

---

[1] Although not relevant to this Motion, Defendant alleges that the parties' relationship was badly damaged in January 2009, when Defendant's newly appointed President and Chief Executive Officer, Daniel J. Schrider, reviewed a conflicts of interest compliance certification and learned that Jay Fitzhugh, who was then the Bank's Chief Information Officer, had been acting as a paid consultant for Plaintiff during the previous year while in full time employment with Defendant, that Fitzhugh had a close personal relationship with Karnes, and that Karnes had hosted Fitzhugh at various dinners and sporting events. When Schrider instructed Fitzhugh to cut all ties with Karnes and Plaintiff, Fitzhugh elected, instead, to resign from Defendant and become employed by Plaintiff.

2

negotiations and on May 14, 2007, the RSA was signed in Maryland by Sara E. Watkins, one of Defendant's Executive Vice Presidents, and by Karnes in Ohio.

The RSA did not specify the identity or geographic location of Plaintiff's consultants who would provide services to Defendant under the agreement. Because of the nature of the services that Plaintiff was providing, most of the work could be performed off-site from virtually any location, including the consultants' homes. Generally, Defendant would send vendor contracts and files to Plaintiff by email for evaluation and re-negotiation. Plaintiff assigned several different consultants to perform work under the RSA. These consultants were based in various states, including Maryland, Massachusetts, and North Carolina. Although several of Plaintiff's North Carolina based consultants, including Fran Baltmiskis, one of Plaintiff's Executive Vice Presidents, traveled to Maryland to perform work, none of Defendant's personnel ever traveled to North Carolina in connection with the RSA. All other communications between Defendant and Plaintiff's consultants were by telephone or email.

At some point, Plaintiff directed Defendant to mail the monthly payments due under the RSA to its North Carolina office.

In late 2008, the parties began negotiations regarding Defendant's desire to restructure the RSA. Although the parties' dispute the outcome, it is undisputed that these discussions took place between the parties' respective offices in Ohio and Maryland. These ongoing negotiations ended on June 1, 2009, when Karnes sent Defendant an email in which he asserted that, notwithstanding the parties' other negotiations, the RSA had automatically renewed for another year and that Defendant was obligated to pay an additional $170,472.00 in fees. Defendant rejected this assertion.

On July 8, 2009, Plaintiff filed its Complaint in the Superior Court of Mecklenburg County, seeking in excess of $170,000.00 pursuant to a breach of contract claim.

On August 6, 2009, Defendant removed the case to the United States District Court for the Western District of North Carolina, alleging the existence of diversity subject matter jurisdiction. Said removal has not been challenged and appears proper.

On August 7, 2009, Defendant filed its Motion to Dismiss for lack of personal jurisdiction, or in the alternative to transfer venue. Because there is no basis for personal jurisdiction in this forum, the undersigned has not considered the venue question.

Defendant's Motion to Dismiss has been fully briefed and is, therefore, ripe for disposition.

## II. DISCUSSION OF CLAIM

In evaluating a motion to dismiss for lack of personal jurisdiction, all factual disputes must be resolved in favor of the non-moving party, who must make a prima facie showing that exercise of personal jurisdiction is proper. See Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); Vishay Intertechnology, Inc. v. Delta International Corp., 696 F.2d 1062, 1064 (4th Cir. 1982); and General Latex and Chemical Corp. v. Phoenix Medical Technology, Inc., 765 F. Supp. 1246, 1248 (W.D.N.C. 1991).

Analysis of personal jurisdiction has traditionally involved two determinations: "whether the [particular state's] long-arm statute authorizes the exercise of jurisdiction in the circumstances presented and ... whether the exercise of jurisdiction comports with Fourteenth Amendment due process standards." Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). However, because "the North Carolina long-arm statute [N.C. Gen. Stat. § 1-75.4 ] has been

4

interpreted as the legislature's attempt to allow the exercise of personal jurisdiction in all cases where such jurisdiction does not contravene due process, [the] normal two-step inquiry merges into one." Id., citing Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977).

The exercise of personal jurisdiction comports with due process when the defendant purposefully established "minimum contacts" in the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Ellicott Mach., 995 F.2d at 477. In addition, the court's exercise of personal jurisdiction must comport with traditional notions of "fair play and substantial justice." World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (personal jurisdiction exists where defendant introduces product into stream of commerce with expectation that citizens in forum state will use the product).

Later cases have emphasized that the minimum contacts must be "purposeful." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). This "purposeful" requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend himself in a forum state when the non-resident never purposefully availed himself of the privilege of conducting activities within the forum state, thus never invoking the benefits and protections of its laws. See Hanson v. Denckla, 357 U.S. 235, 253 (1958). Moreover, "this purposeful requirement helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." Plant Genetic Systems, N.V. v. Ciba Seeds, 933 F.Supp. 519, 523 (M.D.N.C. 1996), citing Burger King, 471 U.S. at 472; and World Wide Volkswagen, 444 U.S. at 297.

A court's exercise of personal jurisdiction may be specific or general. General personal jurisdiction exists, even when an action does not arise out of the non-resident defendant's contact

with the forum state, if the non-resident defendant has had continuous and systematic contact with the forum state. Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414-15 (1983). Specific jurisdiction involves the exercise of personal jurisdiction over a defendant in an action arising out of the defendant's contacts with the forum state. See Helicopteros, 466 U.S. at 414; McGee v. International Life Ins. Co., 355 U.S. 220, 225 (1957) (single contract which is subject of the action and which was formed in forum state provides basis for personal jurisdiction); English & Smith v. Metzger, 901 F.2d 36, 39 (4th Cir. 1990) (same); and Prince v. Illien Adoptions Int'l Ltd., 806 F.Supp. 1225, 1227 (D. Md. 1992) (same).

As the parties agree in their briefs, Defendant has not had continuous and systematic contact with North Carolina, and accordingly, if personal jurisdiction exists at all, it must be found to have arisen specifically from Defendant's actions concerning the RSA. Where a court seeks to assert specific jurisdiction over a non-resident defendant, the fair warning requirement inherent in due process still demands that the non-resident defendant have purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking its benefits and protections. Burger King, 471 U.S. at 478-79 (the mere existence of a contract with a resident of a forum does not establish the necessary contacts for due process); Chung v. NANA Dev. Corp., 783 F.2d 1124, 1127-28 (4th Cir. 1986); Federal Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 660 (4th Cir. 1989).

It is well settled that a party who knowingly contracts with a North Carolina corporation for work substantially to be performed in North Carolina "purposefully avail[s] itself of the benefits and protections of North Carolina's laws." Jim Myers & Son, Inc. v. Motion Industries, Inc., 140 F.Supp.2d 595, 601 (W.D.N.C. 2001) ("by purposefully contracting with a[n] [equipment] supplier that [third-party defendant] knew was based in North Carolina, it had fair warning that it might be

6

subject to litigation in this forum") (emphasis in original).  However, Plaintiff has failed to demonstrate that Defendant intended to contract with a North Carolina corporation when it entered into the RSA or that the contract would be substantially performed in this state.  See, e.g., United Adver. Agency v. Robb, 391 F. Supp. 626, 630 (M.D.N.C. 1975) (contract between North Carolina advertising agency and Kansas defendants for advertising materials to be prepared in North Carolina and delivered to defendants for use in Kansas and Missouri was not substantially performed in North Carolina so as to subject the defendants to jurisdiction in North Carolina); Stanton Barrett Motorsports, LLC v. Innovative Technologies Corp. of America, 2009 WL 368577, at *2-3 (N.C. App. Feb. 17, 2009) (contact between North Carolina corporation engaged in automobile racing and Florida energy drink company for sponsorship of a race car that was prepared in North Carolina was not substantially performed in North Carolina so as to subject the Florida company to jurisdiction in North Carolina); Sola Basic Indus., Inc. v. Parke County Rural Elec. Membership Corp., 70 N.C. App. 737, 741-42, 321 S.E. 2d 28, 31 (N.C. App. 1984) (contract between North Carolina corporation and Indiana utility company for repair in North Carolina of transformer used in Indiana was not substantially connected to North Carolina so as to subject the Indiana utility to jurisdiction in North Carolina).  As the courts in United Advertising Agency and Stanton Barrett Motorsports each noted, the services could have been provided from anywhere; the dispositive issue was where those services were delivered and utilized - in this case, Maryland.  391 F. Supp. at 631; 2009 WL 368577, at *3.

Moreover, telephonic and internet communication with consultants chosen by Plaintiff after the contract was formed do not rise to the level of purposeful activity to support specific personal jurisdiction.  Eagle Paper Int'l, Inc. v. Expolink, Ltd., 2008 WL 170506, at *5 (E.D. Va. Jan. 17,

7

2008) ("[I]t is well settled that mere telephone calls and electronic communications in furtherance of a transaction are insufficient to constitute purposeful activity.") (citing Superfos Invest., Ltd v. Firstmiss Fertilizer, Inc., 774 F. Supp. 393, 397-98 (E.D. Va. 1991); Unidyne Corp. v. Aerolineas Argentinas, 590 F. Supp. 391, 396 (E.D. Va. 1984)). Similarly, submission of payments to an address in this state do not amount to legally sufficient purposeful activity. Diamond Healthcare of Ohio v. Humility of Mary Health Partners, 229 F. 3d 448, 452 (4th Cir. 2000) (defendant's remittal of payment into a forum is but an "attenuated contact" with the forum); Hanes v. Contractor's Source, Inc., 2008 WL 4533989, at *12 (M.D.N.C. October 6, 2008) ("fact that the disputed invoices were sent from North Carolina and payment was due in North Carolina … is precisely the kind of unilateral activity by a plaintiff which cannot form the basis for a finding of personal jurisdiction over a defendant"); Eagle Paper, 2008 WL 170506, at *5 (defendant's payments into forum state did not support a finding of jurisdiction where plaintiff generated invoices and instructed defendant on where and how to make payments).

The analysis of the District Court in United Adver. Agency, supra, is most instructive. The plaintiff in that case, a North Carolina advertising agency, brought suit in North Carolina against Kansas and Missouri residents who allegedly failed to pay for advertising services which they had requested. Plaintiff argued that jurisdiction existed over those defendants in North Carolina because they knew when they retained the plaintiff that plaintiff was a North Carolina corporation, that plaintiff would perform a substantial portion of the work from plaintiff's North Carolina office, and that the defendants would be required to remit payment for the services to plaintiff in North Carolina. In concluding that the defendants had not purposely availed themselves of the privilege of conducting activities in North Carolina such that they could be sued in North Carolina, the Court

8

stated:

> In the case at bar, the alleged connection of the contract sued on with North Carolina is that it was to be substantially performed here. However, <u>this performance entailed only the unilateral activity of the plaintiff in developing those advertising services</u>. There was no attempt by defendants to use or benefit from the laws of North Carolina; they had no intent to enter the North Carolina market or to advance their own position by contact with this State. The benefit to them from this contract was advertising services to be used in Missouri or Kansas; the fact that these services were prepared in North Carolina was immaterial, the services could have been prepared anywhere and the connection of North Carolina to this contract was truly incidental.

391 F. Supp. at 631 (emphasis added). Unlike the defendants in <u>United Adver. Agency</u>, who knew when they retained the plaintiff that the services would be performed in North Carolina, Defendant had no knowledge where the RSA-related services would be performed. The RSA does not specify which of Plaintiff's consultants would perform the services or where. However, like the defendants in <u>United Adver. Agency</u>, Defendant did nothing to use or benefit from the laws of North Carolina. At most, Defendant contracted for and received services from Plaintiff that were partially performed by North Carolina-based consultants with whom it was required to electronically communicate and for whose services it was required to remit payment to North Carolina. These connections with North Carolina were not the result of any deliberate action by Defendant. Rather, they were the result of Plaintiff's unilateral action in assigning North Carolina-based consultants to perform the services.

In short, the Defendant's limited "contacts" with North Carolina in connection with the RSA, all of which resulted from unilateral actions by Plaintiff, are insufficient to subject Defendant to jurisdiction in North Carolina. <u>Burger King</u>, 471 U.S. at 478-79 (the mere existence of a contract with a resident of a forum does not establish the necessary contacts for due process); <u>Eagle Paper</u>, 2008 WL 170506, at *5; <u>and</u> <u>United Adver. Agency</u>, 391 F. Supp. at 630. Accordingly, the

9

undersigned will respectfully recommend that Defendant's Motion to Dismiss be granted.

### III. ORDER

**IT IS HEREBY ORDERED** that all further proceedings in this action, including all discovery, are **STAYED** pending the District Court's ruling on this Memorandum and Recommendation and Order.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendant's "Motion to Dismiss" (document #3) be **GRANTED** and the Complaint **DISMISSED WITHOUT PREJUDICE**.

### V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO ORDERED AND RECOMMENDED**.

Signed: September 8, 2009

David S. Cayer
United States Magistrate Judge